UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

APRIL TOMBLIN CHAFIN,

　　　　Plaintiff,

v.                                    Civil Action No. 2:11-0034

LOGAN COUNTY COMMISSION,
LOGAN COUNTY HOME CONFINEMENT DEPARTMENT, and
JOHN REED,

　　　　Defendants.

MEMORANDUM OPINION AND ORDER

　　　　Pending are the motions (1) by defendant John Reed for judgment as a matter of law and for a new trial, filed November 1, 2012, (2) by Logan County Commission and Logan County Home Confinement Department (collectively as "Logan County") for judgment as a matter of law, filed November 1, 2012, and (3) by John Reed for leave to file a reply memorandum in excess of 10 pages ("motion for leave"), filed November 26, 2012.[1]

I.

　　　　Plaintiff April Tomblin Chafin alleged in this action that she was sexually assaulted by Mr. Reed, an officer with the Logan County Home Confinement Department.  The case was tried to

---

[1] There is not a 10-page limitation on reply briefs.  The rule to the contrary cited by Mr. Reed does not apply.  It is ORDERED that the motion for leave be, and hereby is, denied as moot.

a jury beginning on October 10, 2012.  On October 12, 2012, the

jury returned a verdict in Ms. Chafin's favor as follows:

> We the members of the jury, by a preponderance of the
> evidence, unanimously find as follows:

1.  Has plaintiff proven her Section 1983 claim
    against defendant John Reed?

    __X__  YES                    _____  NO

2.  Has plaintiff proven her intentional infliction
    of emotional distress claim against defendant
    Reed?

    __X__  YES                    _____  NO

> If you answered "NO" to Questions 1 and 2 above,
> please proceed no further and inform the
> Court Security Officer that you have
> reached a verdict. If you answered "YES"
> to either Questions 1 or 2 above, please
> proceed to Question 3 below.

3.  Has plaintiff proven her negligent training claim
    against the Logan County Commission and the Logan
    County Home Confinement Department?

    __X__  YES                    _____  NO

4.  If you answered " YES" to either of Questions 1
    or 2 above, please enter the amount of damages,
    if any, that plaintiff has proven by a
    preponderance of the evidence was proximately
    caused by defendant Reed alone:

    $ 125,000

5.  (a) If you answered " YES " to Question 3 above ,
    please enter the amount of damages, if any, that
    plaintiff has proven were proximately caused
    by defendants Logan County Commission and Logan
    County Home Confinement Department:

    $ 125,000

2

        (b) To what extent, if any, do the damages
        awarded against defendants Logan County
        Commission and Logan County Home Confinement
        Department duplicate the damages awarded, if any,
        against defendant Reed:

$ <u>125,000</u>

6.   Did defendant Reed act with evil motive or intent, or
    with reckless or callous indifference to the
    plaintiff's federally protected rights?

       <u> X </u>  YES          <u>     </u>  NO

    If you answered "NO" to Question 6, proceed no further
    and inform the Court Security Officer you have reached
    a verdict. If you answered "YES," please proceed to
                Question 7 below.

7.   What is the total amount of punitive damages you award
    against defendant Reed?

<u>$25,000</u>

(Verd. Form at 1-2).

        In his motion for judgment as a matter of law, Mr.

Reed asserts that the verdict is contrary to the weight of the

evidence.  In his motion for new trial, he contends that

improper evidence was introduced and resulted in a manifest

injustice.  Specifically, he challenges the testimony of trial

witnesses Jeaneanne Gilco and Sherry Frye-Cochran, which he

claims "served no purpose other than to establish that . . .

[he] had a bad character [and] that he acted in conformity

therewith in relation to plaintiff."  (Mot. at 2).  He further

asserts that the brief testimony by Ms. Chafin regarding Rachel

Scott prejudiced him inasmuch as the parties were prohibited by
the court from calling Ms. Scott at trial.[2]

      In its motion for judgment as a matter of law, Logan
County contends that "no reasonable jury would have a legally
sufficient evidentiary basis to find for the Plaintiff on her
claim of negligent training" against Logan County  (Logan Cty.
Mot. at 1).


                            II.


A.   Governing Standards


      Federal Rule of Civil Procedure 50(b) provides as
follows:

> If the court does not grant a motion for judgment as a
> matter of law made under Rule 50(a), the court is
> considered to have submitted the action to the jury
> subject to the court's later deciding the legal
> questions raised by the motion. No later than 28 days
> after the entry of judgment--or if the motion
> addresses a jury issue not decided by a verdict, no
> later than 28 days after the jury was discharged--the
> movant may file a renewed motion for judgment as a
> matter of law and may include an alternative or joint

---

[2] Mr. Reed also challenges the punitive damages award.  He
asserts that evidence of his ability to pay should have been
presented to the jury.  While evidence of this type is
permissibly considered by a jury in arriving at a just award, it
was not incumbent upon Ms. Chafin's counsel to develop the
matter when her adversary chose not to do so.

request for a new trial under Rule 59. In ruling on
the renewed motion, the court may:

> (1) allow judgment on the verdict, if the
>     jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter
>     of law.

(Fed. R. Civ. P. 50(b)).

The applicable federal standard governing a Rule 50(b)

motion is summarized as follows:

> Under Fed.R.Civ.P. 50(b), the question is whether a
> jury, viewing the evidence in the light most favorable
> to [the nonmovant], "could have properly reached the
> conclusion reached by this jury." If reasonable minds
> could differ about the result in this case, we must
> affirm the jury's verdict. . . .

Bryant v. Aiken Regional Medical Centers Inc., 333 F.3d 536, 543

(4th Cir. 2003) (citations omitted); International Ground

Transp. v. Mayor And City Council Of Ocean City, 475 F.3d 214,

218-19 (4th Cir. 2007)("When a jury verdict has been returned,

judgment as a matter of law may be granted only if, viewing the

evidence in a light most favorable to the non-moving party (and

in support of the jury's verdict) and drawing every legitimate

inference in that party's favor, the only conclusion a

reasonable jury could have reached is one in favor of the moving

party."); Tools USA and Equipment Co. v. Champ Frame

Straightening Eqpt. Inc., 87 F.3d 654, 656-57 (4th Cir. 1996)

(citations omitted) ("Champ argues that the district judge erred in denying its motions for judgment as a matter of law with respect to both liability and damages. A court may only grant a motion for judgment as a matter of law (formerly j.n.o.v.) if, viewing the evidence in the light most favorable to the non-moving party and drawing every legitimate inference in that party's favor, the court "determine[s] that the only conclusion a reasonable trier of fact could draw from the evidence is in favor of the moving party."); Hetzel v. County of Prince William, 89 F.3d 169, 171 (4th Cir. 1996).

    Respecting the request for new trial, Rule 59(a) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. Proc. 59(a). For example, a trial judge may grant a new trial if he is of the opinion that the verdict is against the clear weight of the evidence or is based upon evidence which is false or will result in a miscarriage of justice. Metrix Warehouse, Inc. v. Daimler-Benz Aktienge-sellschaft, 828 F.2d 1033, 1043 (4th Cir. 1987); Wyatt v. Interstate & Ocean Transport Co., 623 F.2d 888, 892 (4th Cir. 1980); Williams v. Nichols, 266 F.2d 389, 392 (4th Cir. 1959).

B.   Mr. Reed's Motion for Judgment as a Matter of Law and for a
     New Trial

          Respecting the motion for judgment as a matter of law,

the governing standard necessarily focuses the inquiry on Ms.

Chafin's testimony.  In summary, she stated that on April 7,

2009, she was placed on home confinement for approximately two

months while awaiting sentencing.  She believed that a violation

of her home confinement terms would result in revocation and

imprisonment.  She met Mr. Reed when he summoned her to his

office the day after she violated her supervision conditions.

He explained that if she wished to avoid jail she would have to

provide him oral sex.  She described the event in significant

detail.

          At an unspecified later time while still under

supervision, Ms. Chafin obtained an interview at Valley Market

with Mr. Reed's assistance.  She reported to him following the

interview, informing him she had gotten the job.  Mr. Reed

smiled and stated that she "owed him one."  (Trans. at 198).  He

requested oral sex, which Ms. Chafin provided.  She testified

that she was under a continuing fear that the circuit court

would revoke her supervision at Mr. Reed's urging.  Mr. Reed

reminded her of that very potentiality.

On a third occasion, Ms. Chafin was informed during a
private conversation with Mr. Reed prior to her sentencing that
he could "give me a bad report or a good report, and if I wanted
a good one, I had to do what he wanted me to do."  (Trans. at
204).  Similar to the two earlier events recounted, Ms. Chafin
then offered significant detail respecting how and why she
performed oral sex on Mr. Reed this third time.

In proving her claim pursuant to 42 U.S.C. § 1983, Ms.
Chafin was required to demonstrate several elements by a
preponderance of the evidence.  First, she was required to show
that Mr. Reed committed a Fourteenth Amendment Due Process
violation against her.  Second, she was required to demonstrate
that Mr. Reed acted under color of state law in doing so, a
matter to which the parties stipulated.  Third, Ms. Chafin was
required to demonstrate that Mr. Reed's actions were the
proximate cause of the damages she sustained.

As a part of proving the first element, namely, the
Due Process violation, she was required to demonstrate that Mr.
Reed inflicted unnecessary and wanton pain and suffering upon
her.  In cases of sexual abuse or rape, as the court instructed
the jury, the conduct itself constitutes sufficient evidence of
the infliction of unnecessary and wanton pain and suffering.

Reduced to its essence, Ms. Chafin was required to prove that Mr. Reed, while acting in his capacity as a home confinement officer, sexually abused her.  Viewing the evidence in the light most advantageous to Ms. Chafin, and drawing every legitimate inference in her favor, a reasonable jury could have permissibly returned the verdict rendered.  The court, accordingly, ORDERS that Mr. Reed's motion for judgment as a matter of law be, and it hereby is, denied.[3]

Mr. Reed next contends that he should be awarded a new trial based on the asserted error of permitting the testimony of Ms. Gilco and Ms. Frye-Cochran.  He asserts the witnesses' testimony amounted to prohibited character evidence.  The parties present the issue pursuant to Federal Rule of Evidence 404(b), which provides materially as follows:

> (b) Crimes, Wrongs, or Other Acts.
>
> > (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> >
> > (2) Permitted Uses; . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

---

[3] To the extent that Mr. Reed additionally asserts under Rule 59(a) that the verdict is against the clear weight of the evidence, the same analysis applies.  There was abundant evidence to support the verdict reached.

> preparation, plan, knowledge, identity,
> absence of mistake, or lack of accident. . .
> .

Fed. R. Evid. 404(b).  As noted by our court of appeals in

United States v. McBride, 676 F.3d 385 (4th Cir. 2012), a four-

factor test governs the admissibility determination:

> (1) The evidence must be relevant to an issue, such as
> an element of an offense, and must not be offered to
> establish the general character of the defendant. In
> this regard, the more similar the prior act is (in
> terms of physical similarity or mental state) to the
> act being proved, the more relevant it becomes. (2)
> The act must be necessary in the sense that it is
> probative of an essential claim or an element of the
> offense. (3) The evidence must be reliable. And (4)
> the evidence's probative value must not be
> substantially outweighed by confusion or unfair
> prejudice in the sense that it tends to subordinate
> reason to emotion in the factfinding process.

Id. at 396 (quoting United States v. Johnson, 617 F.3d 286, 296-

97 (4th Cir. 2010))(quoting United States v. Queen, 132 F.3d

991, 997 (4th Cir. 1997)); see United States v. Rawle, 845 F.2d

1244, 1247 (4th Cir. 1988).


        At the time of her testimony, Ms. Gilco was

incarcerated at the Lakin Correctional Complex after pleading

guilty to first degree robbery.  She testified to serving a

five-month period of home confinement, from April to October

2009, under Mr. Reed's supervision.  She stated in stark terms

what Mr. Reed did to her during the supervision term: "He made

me give him oral sex two times to stay out of jail.  He raped me

twice."  (Trans. at 273).  On the first occasion, Mr. Reed
caught Ms. Gilco driving without a license.  He entered her
vehicle and directed her to park in the basement of the county
parking garage.  On the second occasion, Mr. Reed promised to
"fix" a violation of her home confinement terms.  He also told
her to park alone in the basement of the parking garage when she
next returned to the home confinement office.  When she arrived
there on a return trip, Mr. Reed directed her back to her
vehicle in the garage.  He entered the vehicle later and told
her she "knew what . . . [she] had to do."  (Trans. at 292).
She again performed oral sex upon him.

        Ms. Frye-Cochran testified that she served two terms
of home confinement beginning respectively in February and
October 2007.  She first met Mr. Reed in February 2007.  She
testified that Mr. Reed ordered her to provide him oral sex on
two occasions during her second, six-month term in October 2007.
Both episodes occurred in the parking lot at a local grocery
store.  While few details were provided on direct examination
respecting the second incident, Ms. Frye-Cochran testified that
the first occurred during evening hours at a local grocery store
parking lot "out back toward the dumpsters."  (Trans. at 348).

        In assessing this evidence, the first and second
prongs of the applicable test may be considered in tandem.  The

Rule 404(b) evidence offered by Ms. Gilco and Ms. Frye-Cochran was both relevant and probative on an issue in the case, namely, Mr. Reed's alleged use of his position of authority to extract sexual favors from females under his supervision.  The evidence was not offered to establish his character.  It was offered in support of a pattern and practice engaged in by him and in service of the preparation and planning undertaken by him as he carried out the abuse.

The analysis of the first element also reflects that the greater the similarity between the bad acts alleged by Ms. Gilco and Ms. Frye-Cochran, and those perpetrated on Ms. Chafin, the more relevant the challenged testimony becomes.  The similarities are evident here.  Ms. Chafin, Ms. Gilco, and Ms. Frye-Cochran were all under home confinement supervision.  They each violated the terms of their supervision and confronted revocation and incarceration.  In that crucible, Mr. Reed used his position of power to (1) locate a secluded place, (2) offer the supervisees his help in maintaining their continued freedom, and (3) received in exchange a very specific physical favor, namely, oral sex.

It is true, as Mr. Reed emphasizes in his briefing, that the specific details of each event differ a bit, such as the location of the abuse and Mr. Reed's mannerisms and speech

during it.  A complete identity of circumstances, however, is unnecessary.  The modus operandi is materially identical in each instance.

Respecting the third factor, the challenged witness testimony bore significant indicia of reliability.  The two witnesses provided quite a bit of detail concerning three of the four episodes about which they testified.  Additionally, Ms. Gilco had something to lose by testifying and Ms. Frye-Cochran had nothing to gain.  Ms. Gilco testified that (1) she was "born and raised" in the Logan County area, (2) she would eventually return to it, and (3) she is "fearful of repercussions" as a result of her testimony.  (Trans. at 293).

In contrast, Ms. Frye-Cochran let the statute of limitations lapse for her claim against Mr. Reed.  One struggles to muster a reasonable explanation for her decision to come forward and publicly testify about an intensely personal, and painful, chapter of her life, recounting not only the abuse she suffered at Mr. Reeds' hands but also her longstanding substance abuse problem and the tragic life decisions to which it led.

The final factor requires the court to assess whether the probative value of the evidence is substantially outweighed by confusion or unfair prejudice in the sense that it tends to

subordinate reason to emotion in the fact finding process. Confusion does not appear to be a concern. Unfair prejudice, however, is a matter that the court considered in depth. That prejudice was one of the reasons why the court disallowed other Rule 404(b) evidence proffered by Ms. Chafin. For example, she sought to introduce an alleged inculpatory tape recorded telephone conversation between another home confinement supervisee, namely, Rebecca Whitt, and Mr. Reed. Deeming the circumstances sufficiently dissimilar, and considering the diminished probative value of the evidence, the proof was disallowed.

The testimony of Ms. Gilco and Ms. Frye-Cochran is different from that proffered from Ms. Whitt. The evidence was certainly prejudicial to Mr. Reed's interests but not unfairly so. Further, the probative value of the evidence, as earlier summarized, was substantial given the similarity of the events recounted. The court discerns no error in admitting the testimony of Ms. Gilco and Ms. Frye-Cochran.[4]

---

[4] As noted, the court has analyzed the matter within the Rule 404(b) parameters discussed by the parties. They do not mention Rule 415(a), which provides as follows:

In a civil case involving a claim for relief based on a party's alleged sexual assault . . . the court may admit evidence that the party committed any other

(cont.)

14

Mr. Reed's final claim of error relates to Ms. Chafin's mention of Rachel Scott during her testimony.  He contends that the court should not have permitted utterance of the name inasmuch as Ms. Scott was barred from testifying for failure to appear at her discovery deposition.[5]  Mr. Reed concedes, however, that "Plaintiff and Defendant Reed agreed that neither would call Ms. Scott at trial, due to the inability [to] depose her."  (Memo. in Supp. at 4).

The court has reviewed the relevant portion of the trial record.  During her testimony, Ms. Chafin mentioned that she witnessed Mr. Reed pick up prostitutes.  Her counsel stated "Speaking of that, do you know Rachel Scott?"  (Trans. at 213).  Mr. Reed's counsel objected, stating "Your Honor.  The witness has been excluded."  (Trans at 213).  That objection was withdrawn, however, based upon Ms. Chafin's counsel's promise

---

sexual assault . . . . The evidence may be considered as provided in Rules 413 and 414.

F.R.E. 415(a).  Rules 413 and 414 permit the evidence to "be considered on any matter to which it is relevant."  F.R.E. 413, 414.

[5] Mr. Reed asserts that he was prohibited from calling Ms. Scott in rebuttal.  He fails to identify that portion of the record, however, where he made such a request, much less where the court denied the relief sought.  Mr. Reed also does not direct the court to that portion of the record where he requested a limiting instruction respecting the testimony concerning Ms. Scott or that offered by Ms. Gilco and Ms. Frye-Cochran.

that he was attempting to adduce only what Ms. Chafin witnessed and not anything that Ms. Scott may have said.  (See id. (defense counsel stating in response to whether she would withdraw the objection "Yes, if that's all you are going into.").

Ms. Chafin then testified she saw Ms. Scott get into Mr. Reed's car on one occasion without any money and return with $40, which was used to buy food for both Ms. Scott and Ms. Chafin.  No objection was made, Mr. Reed's counsel cross examined Ms. Chafin on the matter, and she later questioned Mr. Reed about it as well during his direct testimony.  The court deems no error to have occurred.

Based upon the foregoing discussion, it is ORDERED that Mr. Reed's motion for judgment as a matter of law and for a new trial be, and it hereby is, denied.

B.   Logan County's Motion for Judgment as a Matter of Law

Logan County asserts that no reasonable jury would have a legally sufficient evidentiary basis to return a verdict for Ms. Chafin on the negligent training claim.  There are three matters of record that guide the court's analysis of the

challenge. First, Ms. Chafin admitted that she lacked any information respecting Mr. Reed's training.

Second, Mr. Reed admitted, and Ms. Chafin appears to concede, that he received on-the-job training as a home confinement officer. Mr. Reed testified that Director Gower "lined me out of my duties as an officer, what she expected out of me." (Trans. at 111). He offered what appeared to be a nonexclusive listing of those expectations as follows: "learn to monitor my clients, hook up the equipment, take care of the equipment, do drug tests." (Id. at 111). For example, he noted that the procedure followed for urinalysis screening required that a female member of the office staff, not Mr. Reed, enter the restroom with the supervisee when the sample is obtained. (Id. at 113 (Mr. Reed noting "They are required to go with them.")).

Additionally, the Logan County Home Confinement Director, Patricia Gower, testified that on-the-job training included (1) use of the home confinement monitoring equipment, and (2) procedures for office and home visits. Prior to being authorized to make home visits alone, Mr. Reed was first required to accompany Director Gower during her home visits for a one to two-month period. Director Gower additionally observed that (1) a home confinement officer was prohibited from closing

17

his or her office door when a client was reporting, and (2) home visits to a supervisee of the opposite sex could only be performed by two home confinement officers in tandem.  While Mr. Reed admitted he had made home visits without another officer accompanying him, he knew he was not to be in his office alone with female supervisees.  (Id. at 158, 159 ("I mean, you know, you never put a man and a woman who work together like that in the same room alone.")).  It thus seems undisputed that Mr. Reed at least understood certain gender-appropriate policies governing his supervision activities.

Third, as a matter of commonsense and perhaps based upon the foregoing on-the-job policies, Mr. Reed reiterated time and again that he did not require training to understand that he was prohibited from having intimate relations with those under his supervision.  For example, he testified that a home confinement officer should be charged criminally if he admits to having a supervisee perform oral sex on him.  He also noted as follows with respect to improperly touching a supervisee: "I understood that there was no way you could do stuff like that. Anybody with common sense understands that. . . . I was never told that, but I didn't have to be told that."  (Id. at 145).

This type of common-sense understanding has often exonerated institutional defendants in the failure-to-train

setting.  For example, in federal civil rights cases it has been observed that if the impropriety of an action "is obvious to all without training," a failure to train a police officer to refrain from taking that action will usually not show deliberate indifference.  <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 490 (11th Cir. 1997) (rejecting plaintiff's claim that officer's sexual molestation of arrestee resulted from deliberate indifference in training and supervision); <u>Parrish v. Ball</u>, 594 F.3d 993, 999 (8th Cir. 2010) (no patently obvious need to train an officer not to sexually assault women); <u>Kitzman-Kelley, on behalf of Kitzman-Kelley v. Warner</u>, 203 F.3d 454, 459 (7th Cir. 2000); <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1308 (10th Cir. 1998) ("Even if the courses concerning gender issues and inmates' rights were less than adequate, we are not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates. Specific or extensive training hardly seems necessary for a jailer to know that sexually assaulting inmates is inappropriate behavior."); <u>Andrews v. Fowler</u>, 98 F.3d 1069, 1077, 36 Fed. R. Serv. 3d 711 (8th Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); <u>see</u> Michael Avery <u>et al.</u>, <u>Police Misconduct: Law and Litigation</u> § 4:21 (Elec. ed. 2012)

("There may be no liability for a failure to train officers with respect to matters which should be obvious even in the absence of training.").

In assessing the proof at trial, the court once again turns to the elements of the claim. The Supreme Court of Appeals of West Virginia has consistently observed that, in order "[t]o be actionable, negligence must be the proximate cause of the injury complained of and must be such as might have been reasonably expected to produce an injury."Syl. pt. 11, Anderson v. Moulder, 183 W. Va. 77, 394 S.E.2d 61 (1990); syl. pt. 4, Haddox v. Suburban Lanes, Inc., 176 W. Va. 744, 349 S.E.2d 910 (1986); Syl. pt. 3, Hartley v. Crede, 140 W. Va. 133, 82 S.E.2d 672 (1954). It has been further stated that "'Proximate cause is a vital and an essential element of actionable negligence and must be proved to warrant a recovery in an action based on negligence.'" Syl. pt. 7, Judy v. Grant County Health Dept., 210 W. Va. 286, 557 S.E.2d 340 (2001) (quoting syl. pt. 3, McCoy v. Cohen, 149 W. Va. 197, 140 S.E.2d 427 (1965)).

The supreme court of appeals has additionally observed that the "concept of proximate cause . . . [is] 'that cause which in actual sequence, unbroken by any independent cause, produced the wrong complained of, without which the wrong would

not have occurred.'" <u>White v. Wyeth</u>, 227 W. Va. 131, 139, 705 S.E.2d 828, 836 (2010) (quoting syl. pt. 3, in part, <u>Webb v. Sessler</u>, 135 W. Va. 341, 63 S.E.2d 65 (1950)).

　　　　Mindful of the fact that a proximate cause finding is committed to the jury, the court is obligated under Rule 50(b) to assure that sufficient evidence supports the finding returned. Inasmuch as the jury found Mr. Reed to have perpetrated the sexual assaults at issue in this action, there is no legally sufficient basis upon which to base a finding that more or better training to the contrary would have dissuaded him. Mr. Reed testified to his understanding that he was prohibited from engaging in the sexual abuse of supervisees that the jury found to have occurred. If common sense did not inform him of that boundary line, the Logan County training process did so as a matter of law. That training was designed to mitigate the possibility that inappropriate officer-supervisee contacts might occur. It was simply ignored by Mr. Reed, without any actionable negligence by Logan County that proximately caused the resulting harm to Ms. Chafin. The court is, accordingly, unable to sustain that portion of the verdict against Logan County as a matter of law.

　　　　Consequently, it is ORDERED that Logan County's motion for judgment as a matter of law be, and it hereby is, granted.

It is further ORDERED that the liability and damage portions of the jury's verdict rendered in favor of Ms. Chafin and against Logan County be, and hereby are, set aside.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and any unrepresented parties.

DATE:  January 16, 2013

John T. Copenhaver, Jr.
United States District Judge